*1 J*

United States District Court
Southern District of Texas
FILED

SEP 0 6 2001

Michael N. Milby
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ALLSTATE CASUALTY COMPANY, | § | |
| PLAINTIFF | § | |
| | § | |
| VS. | § | Civil Action No. B-01-85 |
| | § | |
| S. MARK ROBERTS | § | |
| DEFENDANT | § | |

## DEFENDANT'S INITIAL DISCLOSURES

To: ALL STATE CASUALTY COMPANY, through its attorney of record, Martin J. Phipps.

S. Mark Roberts, Defendant makes these initial disclosures as required by Federal Rule of Civil Procedure 26(a)(1).

### A. Individuals with Discoverable Information

1.      The name, address (work and home), and telephone number (work and home) of individuals likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings include:

   a. S. Mark Roberts, 1600 N. Expressway, Brownsville, Texas 78521,(956)541-3131.

   b. Terese Anne Roberts, 215 Hibiscus, Brownsville, Texas 78520

   c. Allstate Casualty Company, Northbrook, Illinois.

### B. Relevant Documents & Tangible Things

2.      The following is a list of documents, data compilations, and tangible things in Defendant's possession, custody, or control, described by category and location, that Defendant believes are relevant to disputed facts alleged with particularity in the pleadings:

   a. Allstate, Texas Homeowners Policy, Form B and related documents.

   b. Pleadings in Underlying suit.

   c. Reservations of Rights letter.

## C.  Information Related to Calculation of Damages

3.      Under the current pleadings, which involve only a Petition for Declaratory Judgment, no Party is making a claim for damages.  Defendant reserves his right to supplement his answer should Defendant decide to file a Counterclaim to this action.

### D.  Insurance

4.      None with regard to this action which involves only a Petition for Declaratory Judgment.

Respectfully submitted

**RENTFRO, FAULK & BLAKEMORE, L.L.P.**
185 East Ruben Torres Blvd.
Brownsville, Texas  78521
(956) 541-9600
(956) 541-3414 (FAX)

Daniel L. Rentfro, Jr.
State Bar No. 16782010
Fed. Id. 5957
Roman Dean Esparza
State Bar No. 00795337
Fed Id. 22703
ATTORNEY FOR DEFENDANT S. MARK ROBERTS

### CERTIFICATE OF SERVICE

I hereby certify that on this __6__ day of September, 2001, a true and correct copy of the foregoing instrument was forwarded to opposing counsel via Certified Mail, R.R.R. delivery as follows:

Mr. Martin J. Phipps                                      **Via Certified Mail, R.R.R.**
**ADAMI, GOLDMAN & SHUFFIELD**
Nowlin Building
9311 San Pedro, Ste. 900
San Antonio, Texas 78216

Daniel L. Rentfro, Jr.

**Allstate Insurance Comp**
Market Claim Office
1354 N. Loop 1604 E.
San Antonio, TX 78232
Bus:   210-362-3300



July 3, 2000

Mr. S. Mark Roberts
215 Hibiscus Court
Brownsville, Texas
     78520-8024

Re:      Claim No.:      8200717752 SNP

              Insured:         S. Mark Roberts
              Cause No.:      2000-062441-A
              Deborah Louise Roberts vs. Mark Roberts
              107th District Court, Cameron County, Texas.
              AGS No.       .  23100.579

Dear Mr. Roberts:

         You requested that Allstate provide you with a defense under the homeowner's policy
listed above with respect to the lawsuit that Deborah Roberts filed against you.

         We have had an opportunity to review the policy, the suit papers forwarded to us, the facts
known to us thus far, and the law pertaining to he various coverage issues.  In view of the Plaintiff's
allegations, it is questionable whether there is coverage under the policy for the claims asserted.
However, we will agree to provide you with a defense under the policy subject to being able to
dispute the coverage issues at the appropriate time as further detailed below.

         There are provisions of the policy that are at issued in this case which might affect
coverage.

         Section II of your policy pertaining to liability coverage contains the following insurance
agreements:

         If a claim is made or a suit is brought against an <u>insured</u> for damages because of <u>bodily
injury</u> or <u>property damage</u> caused by an <u>occurrence</u> to which this coverage applies, we will:

         (1)      Pay up to our limit of liability for the damages for which the <u>insured</u> is legally
                  liable.

         (2)      Provide a defense at our expense by counsel of our choice even if the suit is
                  groundless, false or fraudulent.

Occurrence is defined as "an accident, including exposure to conditions, which results in <u>bodily
injury</u> or <u>property damage</u> during the policy period. "<u>Bodily injury</u> means bodily harm, sickness or
disease.  This includes required care, loss of services and death that results." "Property Damage
means injury to, destruction of, or loss of use of property."

S. Mark Roberts
July 3, 2000
Page 2

The following pertinent exclusion are listed under the exclusions to Section II, stating that the above coverage will not be provided for:

a.  Bodily injury or property damage which is caused intentionally by or at the direction of the insured.

The Plaintiff's Original Petition alleges that Mark Roberts obtained personal information belonging to the Plaintiff "willfully, and without Plaintiff's knowledge or consent...by stealth and deception." The Petition also alleges that Mark Roberts obtained and subsequently published this information to third parties to "cruelly deprive the Plaintiff to be free from wrongful intrusion," and cause "disclosure of and about her private affairs." Moreover, the Petition claims that Mark Roberts' conduct "constituted a malicious violation of the Plaintiff's right to privacy."

Additionally, the Petition maintains that Mark Roberts "intentionally or recklessly harassed and humiliated the Plaintiff" when he allowed third persons to read the Plaintiff's private and confidential information. Further, it alleges that Mark Roberts' actions were "extreme and outrageous in character" as to go beyond all possible bounds of decency.

The policy provision listed above indicates that there are two reasons for there to be no coverage based on the allegations and claims being asserted by the Plaintiff against you. First, there is no "occurrence" under the policy. Second, the acts complained of are intentional, and thus excluded under the policy.

As a result of these possible reasons for there to be no coverage under this policy, our defense of this matter is made with the express understanding that we reserve any and all rights to contest coverage at a later date. Further, undertaking the defense, including any and all investigation and evaluation in support of such defense, at this time is in no way a waiver of these rights. Further, we reserve the right to withdraw the defense at a later date if allowed to do so by subsequent case decisions, court order, or other developments which would justify withdrawal. We may file a declaratory judgement action during the pendency of this suit in order to have these coverage issues resolved.

If any new information bearing on any of these issues arises, we will be open to reevaluating our position based on the new information.

Very truly yours,

Kathleen Abed

IRVING, TX 75063-1908

AGENT OR OUR NEAREST OFFICE

**NAMED INSURED/MAILING ADDRESS:**   S MARK?ROBERTS

215 HIBISCUS
BROWNSVILLE TX 78520-8024

POLICY NO.:        0 16 825514 01/14 ISSUED DATE:   11-26-96
RENEWAL POLICY
POLICY PERIOD:   EFFECTIVE DATE: JAN 14, 1997
                 EXPIRATION DATE: JAN 14, 1998
                 AT 12:01 A.M. STANDARD TIME AT THE LOCATION
                 OF THE RESIDENCE PREMISES/DWELLING

**AGENT NAME/ADDRESS:**   JAMES C MCNEIL
2334 BOCA CHICA BLVD
BROWNSVILLE TX 78520

PHONE: 210 542-61C?

**MORTGAGEE NAME/ADDRESS:**   INTERN/TIONAL BANK OF COMMERCE
630 E ELIZABETH
BROWNSVILLE TX 78520-5249

RESIDENCE PREMISES/DWELLING:
LOT 23 BLK 12 LOS EBANOS SUB 78020

INSIDE CITY LIMIT, CONSTRUCTION: BRICK VENEER
HYDRANT - UNDER 500 FT, KEY RATE: 13

**POLICY MAILED TO:**

INTERNATIONAL BANK OF COMMERCE
630 E ELIZABETH
BROWNSVILLE TX 78520-5249

| COVERAGES | LIMITS OF LIABILITY | ANNUAL PREMIUMS |
| --- | --- | --- |
| :TON I PROPERTY | | |
| COVERAGE A. DWELLING | $167,000 | |
| OTHER STRUCTURES | $ 14,700 | |
| COVERAGE B. PERSONAL PROPERTY | $ 88,200 | |
| PERSONAL PROPERTY OFF PREMISES | $ 8,820 | |
| SECTION II LIABILITY | | |
| COVERAGE C. PERSONAL LIABILITY | | |
| (EACH OCCURRENCE) | $300,000 | |
| COVERAGE D. MEDICAL PAYMENTS TO OTHERS | | |
| (EACH PERSON) | $   500 | |
| LOSS OF USE COVERAGE | $ 29,400 | |
| | BASIC PREMIUM $ 1,157 | |
| INCREASED LIABILITY LIMITS PREMIUM | | $      5 |
| OTHER COVERAGES | | |
| RESIDENCE GLASS COVERAGE | | $      5 |
| | TOTAL POLICY PREMIUM | $ 1,167 |

APPLICABLE DISCOUNTS: 2% SECURITY DEVICE DISCOUNT APPLIED
5% CLAIM FREE DISCOUNT APPLIED

| DEDUCTIBLES (SECTION I ONLY) | AMOUNT OF DEDUCTIBLE |
| --- | --- |
| DEDUCTIBLE CLAUSE 1 | $ 1470 |
| DEDUCTIBLE CLAUSE 2 | $ 1470 |
| | TOTAL POLICY PREMIUM $ 1,167 |

TOTAL PREMIUM FOR THE POLICY PERIOD STATED IS  $1167.00

SEE THE PAGE TO THE LEFT FOR A DESCRIPTION OF YOUR
COVERAGES, LIMITS OF LIABILITY AND DEDUCTIBLES

ED-1 70 031 001 116017 3 70      1575006 2 51 1991
                                 000000

**DO NOT PAY**

**INSURED HAS BEEN BILLED**

624257 11/26 90270703 70

?UBJEC" TO THE FOLLOWING FORMS AND ENDORSEMENTS
TEXAS HOMEOWNERS POLICY - FORM B (1-1-96)
HO-340 HOMEOWNERS AMENDATORY ENDORSEMENT
HO-350 REFUSAL TO RENEW MANDATORY ENDORSEMENT
HO-101 (9-1-95) REP'..CEMENT OF PERSONAL PROPERTY
HO-105 (7-8-92) RESIDENCE GLASS COVERAGE

* LEASE REFER TO ATTACHED PROPERTY INSURANCE ADJUSTMENT LETTER.
?E ADDITIONAL INFORMATION ON THE BACK OF THIS PAGE.

NAMED INSURED/MAILING ADDRESS:   S MARK?ROBERTS
215 HIBISCUS
BROWNSVILLE TX 78520-8024

AGENT NAME/ADDRESS:   JAMES C MCNEIL
2354 BOCA CHICA BLVD
BROWNSVILLE TX 78520
PHONE:   210 542-6165

MORTGAGEE NAME/ADDRESS:   INTERNATIONAL BANK OF COMMERCE
630 E ELIZABETH
BROWNSVILLE TX 78520-5249

...IG: CONTACT YOUR ALLSTATE
AGENT OR OUR NEAREST OFFICE                    IRVING, TX 75063-1908

POLICY NO.:   0 16 823514 01/14 ISSUED DATE:   11-26-96
RENEWAL POLICY
POLICY PERIOD:   EFFECTIVE DATE: JAN 14, 1997
EXPIRATION DATE: JAN 14, 1998
AT 12:01 A.M. STANDARD TIME AT THE LOCATION
OF THE RESIDENCE PREMISES/DWELLING

RESIDENCE PREMISES/DWELLING
LOT 23 BLK 12 LOS EBANOS SUB 78020

INSIDE CITY LIMIT, CONSTRUCTION: BRICK VENEER
HYDRANT - UNDER 500 FT, KEY RATE: 13

POLICY MAILED TO:

COVERAGES

|  | LIMITS OF LIABILITY | ANNUAL PREMIUMS |
|---|---|---|
| .TION I PROPERTY | | |
| COVERAGE A. DWELLING | $147,000 | |
| COVERAGE B. OTHER STRUCTURES | $ 14,700 | |
| PERSONAL PROPERTY | $ 88,200 | |
| PERSONAL PROPERTY OFF PREMISES | $ 8,820 | |
| SECTION II LIABILITY | | |
| COVERAGE C. PERSONAL LIABILITY (EACH OCCURRENCE) | $300,000 | |
| COVERAGE D. MEDICAL PAYMENTS TO OTHERS (EACH PERSON) | $ 500 | |
| LOSS OF USE COVERAGE | $ 29,400 | |
|  | BASIC PREMIUM | $ 1,157 |
| INCREASED LIABILITY LIMITS PREMIUM | | $ |
| OTHER COVERAGES | | |
| RESIDENCE GLASS COVERAGE | | $ |
|  | TOTAL POLICY PREMIUM | $ 1,167 |

DEDUCTIBLES (SECTION I ONLY)   AMOUNT OF DEDUCTIBLE
DEDUCTIBLE CLAUSE 1   $ 1470
DEDUCTIBLE CLAUSE 2   $ 1470
                       TOTAL POLICY PREMIUM   $ 1,167

S MARK?ROBERTS
215 HIBISCUS
BROWNSVILLE TX 78520-8024

APPLICABLE DISCOUNTS: 2% SECURITY DEVICE DISCOUNT APPLIED
5% CLAIM FREE DISCOUNT APPLIED

TOTAL PREMIUM FOR THE POLICY PERIOD STATED IS    $1167.00

SEE THE PAGE TO THE LEFT FOR A DESCRIPTION OF YOUR
COVERAGES, LIMITS OF LIABILITY AND DEDUCTIBLES

PLEASE NOTE: THIS IS NOT A REQUEST FOR PAYMENT.
YOUR BILL WILL BE MAILED SEPARATELY.

ED-1 70 031 001 110017 3 70    1575006 2 51 1991    000000

PLEASE REFER TO THE FOLLOWING FORMS AND ENDORSEMENTS
TEXAS HOMEOWNERS POLICY - FORM B (1-1-96)
HO-540 HOMEOWNERS AMENDATORY ENDORSEMENT
110-550 REFUSAL TO RENEW MANDATORY ENDORSEMENT
HO-101 (9-1-93) REPLACEMENT OF PERSONAL PROPERTY
HO-105 (7-8-92) RESIDENCE GLASS COVERAGE

SE REFER TO ATTACHED PROPERTY INSURANCE ADJUSTMENT LETTER.
DITIONAL INFORMATION ON THE BACK OF THIS PAGE

624257 11/26 90270702 70



**ENDORSEMENT NO. HO-350**
**Effective**
**January 1, 1994**



**REFUSAL TO RENEW**
**MANDATORY ENDORSE**

This endorsement must be attached to all Homeowners policies.

**Section I and II Conditions**, Item 6.c. is amended as follows:

c.   We may refuse to renew this policy if you have filed three or more claims under the policy in any three year period that do not result from natural causes.

If you have filed two claims in a period of less than three years, we may notify you in writing, that if you file a third claim during the three year period, we may refuse to renew this policy by providing you proper notice of our refusal to renew as provided in d. below.   If we do not notify you after the second claim, we may not refuse to renew this policy because of losses.

<u>Instructions</u>

An insurer may discontinue the use of this endorsement when the amended language outlined above has incorporated into the homeowners coverage form(s) (Forms HO-A, HO-B, HO-C, HO-BT, HO-CT, HOB-CON, HOC However, the amended language must be incorporated into the homeowners coverage form(s) on or before Novei 1994, at which time this endorsement, HO-350, will automatically be withdrawn.

**Prescribed by the State Board of Insurance**
**Endorsement No. HO-350 - Refusal To Renew Mandatory Endorsement**
**Effective January 1, 1994**



**ENDORSEMENT NO. HO-340**
Effective
October 2, 1993

**HOMEOWNERS
AMENDATORY ENDORSEME
MANDATORY**

This endorsement must be attached to all Homeowners policies.

**I.**   **Definitions:** Item 4.d. is deleted and replaced by the following:

4.d.   With respect to any vehicle to which this policy applies:

(1)   any employee of an **insured** while engaged in the employment of the **insured**; or

(2)   any other person using the vehicle on an **insured location** with your consent.

**II.**   **Section I - Conditions:** Item No. 6., **Our Option**, is deleted and replaced by the following:

6.   **Salvage Rights.** If we notify you that we will pay your claim or part of your claim, the notice must a
state whether we will or will not take all or any part of the damaged property. We must bear the expen
of our salvage rights.

Prescribed by the State Board of Insurance
Endorsement No. HO-340 - Homeowners Amendatory Endorsement - Mandatory
Effective October 2, 1993



## ENDORSEMENT NO. HO-105
### Effective
### July 8, 1992

## RESIDENCE GLASS COVERAG

The terms and conditions of this endorsement apply only to the property described in this endorsement.  None
terms, conditions and limits of liability stated in the policy apply to this endorsement except the Waiver or Char
Policy Provisions, Cancellation, Assignment, Subrogation and Definitions.

This insurance applies to:(check the box(es) that applies)

☐   Unscheduled Glass;

☐   Scheduled Glass described in the schedule below;

while in or on the dwelling or other structures on the <u>residence premises</u>.

1.   **Residence Glass Coverage.**  We will pay for damages to residence glass caused by breakage of or by
chemicals applied to such glass if:

a.   described in the schedule below.

b.   permanently attached to the dwelling or other structures on the <u>residence premises</u>,  including
storm windows and doors not permanently attached.

We will also pay for making temporary repairs, resulting damage to encasing frames, and removing or
replacing obstructions because of a covered loss to glass.

2.   **Exclusions.**  We will not pay for loss or damage caused by:

a.   fire.

b.   war. This includes undeclared war, civil war, insurrection, rebellion or revolution or any
consequence of these.

c.   nuclear reaction, nuclear radiation or radioactive contamination or any consequence of these.

3.   **Loss Settlement.**

a.   **Unscheduled Residence Glass.**  We will not pay more than:

(1)   $100 for all damage in any one occurrence for each of the following objects:

(a)   multiple plate insulating unit;
(b)   radiant heating panels;
(c)   conservatory or greenhouse glass;
(d)   chandeliers or light fixtures;
(e)   jalousies, louvers or shutters;
(f)   venetian type doors or windows;
(g)   stained or leaded glass; or
(h)   glass bricks, shingles or other structural glass.

(2)   $100 for any one pane or plate of glass comprising any other object not listed in 3.a.(1) above.



## ENDORSEMENT NO. HO-101
### Effective
### September 1, 1993

## REPLACEMENT OF PERSONAL PROPERTY

### SECTION I PROPERTY COVERAGE

For an included additional premium, our limit of liability and payment for covered loss to:

1.  personal property; and

2.  wall-to-wall carpeting and cloth awning (Forms HO-B & HO-C only);

is extended to include Replacement Cost.  Replacement Cost means there will not be a deduction for depreciation. Payment will not exceed the smallest of the following:

    a.  the Coverage B (Personal Property) limit of liability;

    b.  the replacement cost at the time of loss;

    c.  for property that is repairable, the cost of repair with material of like kind and quality with no deduction for depreciation; or,

    d.  the interest of the <u>insured</u>.

We do not pay replacement cost for:

    a.  property which cannot be replaced.

    b.  property not maintained in good or workable condition.

    c.  property that is either obsolete or useless to the <u>insured</u> at the time of loss.

    d.  watercraft including outboard motors for any replacement cost in excess of $2,500.

        We will pay replacement cost of watercraft including outboard motors up to a limit of $2,500.

    e.  Property that is not repaired or replaced.

### Loss Settlement:

    a.  We will pay you:

        1.  the replacement cost of your damaged property up to $1,500; and

        2.  the actual cash value of your remaining damaged property

        within 5 business days after we notify you that we will pay the claim.

        If you repair or replace the damaged property, you may make claim for reimbursement on a replacement cost basis for the replacement cost of your property exceeding $1,500.  You must repair, restore or replace the property within 365 days after the loss.  Reimbursement will be made within 5 business days after we receive proof that the property has been repaired, restored or replaced.

    b.  In lieu of (a.) above, we may offer and you may accept or reject our offer to provide a replacement item of like kind and quality for your damaged property.

Prescribed by the State Board of Insurance
Endorsement No. HO-101 - Replacement of Personal Property
Effective September 1, 1993

# Allstate®

*Texas Homeowners Policy*
*Form B*

# QUICK REFERENCE
# TEXAS HOMEOWNERS POLICY - FORM B

Insuring Agreement ...................................................... 1
Definitions................................................................. 1

## SECTION I - PROPERTY COVERAGE

Coverage A
  Dwelling .............................................................. 1
  Other Structures.................................................. 1
Coverage B
  Personal Property ................................................ 2
  Personal Property Off Premises ............................ 2
Special Limits of Liability ......................................... 2
Property Not Covered .............................................. 2
Extensions of Coverage
  Debris Removal.................................................... 2
  Loss of Use.......................................................... 2
  Reasonable Repairs ............................................. 3
  Trees, Shrubs, Plants and Lawns .......................... 3
  Property Removed ................................................ 3
  Consequential Loss .............................................. 3
  Automatic Removal................................................ 3
Perils Insured Against
  Coverage A (Dwelling) .......................................... 3
  Coverage B (Personal Property) ............................ 3

Exclusions .............................................................. 4

Deductibles ............................................................ 5

Section I - Conditions
  Insurable Interest and Limit of Liability................... 5
  Residential Community Property Clause ............... 5
  Duties After Loss
    **Your Duties After Loss** .................................... 5
    Our Duties After Loss........................................ 6
  Loss Settlement.................................................... 6
  Loss to a Pair or Set............................................. 6
  Salvage Rights ..................................................... 7
  Appraisal............................................................... 7
  Loss Payment........................................................ 7
  Catastrophe Claims .............................................. 7
  Other Insurance .................................................... 7
  Suit Against Us ..................................................... 7
  Abandonment of Property ...................................... 7
  **Vacancy - Suspension of Coverage** ................. 7
  Mortgage Clause.................................................... 7
  No Benefit to Bailee ............................................... 8

## SECTION II - LIABILITY COVERAGE

Coverage C (Personal Liability)...................................... 8
Coverage D (Medical Payments to Others) .................... 8

Exclusions
  Coverage C and D Exclusions................................ 8

**Prescribed by the Texas Department of Insurance
Homeowners Form B - Effective July 8, 1992
(Revised January 1, 1996)**

Coverage C Exclusions.............................
Coverage D Exclusions.............................

Additional Coverages
  Claim Expenses..................................
  Imperative Medical Expenses to Others...........
  Damage to Property of Others....................

Section II - Conditions
  Limit of Liability.................................
  Severability of Insurance.......................
  **Duties After Loss**............................
  Duties of an Injured Person ....................
  Payment of Claim under Coverage D..............
  Suit Against Us .................................
  Bankruptcy of the Insured.......................
  Other Insurance .................................
  Notice of Settlement of Liability Claim.........

## POLICY CONDITIONS
## APPLYING TO SECTIONS I AND II

Policy Period .......................................
Concealment or Fraud ...............................
Liberalization Clause ...............................
Waiver or Change of Policy Provisions ..............
Cancellation........................................
Refusal to Renew....................................
Assignment..........................................
Subrogation.........................................
Death ..............................................

---

### YOUR DUTIES AFTER A LOSS

Section I:

1. Protect the property from further damage.
2. Give prompt written notice to the company
3. Call the police if a law has been broken.
4. Make a list of all damaged personal prop
   including costs.
5. If requested, obtain proof of loss form
   your agent or the company and submit w
   91 days of the request.

Section II:

1. Do not make any voluntary payments ex
   for first aid to others at the time of
   accident.
2. Give written notice to agent or comp
   including details about the accident and
   witnesses.
3. Send copies of legal notices you receive to
   company.
4. Help the company get the neces
   information to make settlement.

FOR A COMPLETE LIST OF YOUR DUTIES S
PAGES 5 AND 10 OF YOUR POLICY.

# HOMEOWNERS FORM B

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applic̶ provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown on the declarations page and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. **"Bodily injury"** means bodily harm, sickness or disease. This includes required care, loss of services and death that results.

2. **"Business"** includes trade, profession or occupation.

3. **"Business day"**, when used in this policy means a day other than a Saturday, Sunday or holiday recognized by the state of Texas.

4. **"Insured"** means you and residents of your household who are:

   a. your relatives; or

   b. other persons under the age of 21 and in the care of any person named above.

   Under Section II Liability, **"insured"** also means:

   c. any person or organization legally responsible for animals or watercraft to which this policy applies. You or a person included in 4.a. or 4.b. above must own the animal or watercraft. A person or organization using or having custody of these animals or watercraft without consent of the owner is not an **insured**.

   d. With respect to any vehicle to which this policy applies:

      (1) any employee of an **insured** while engaged in the employment of the **insured**; or

      (2) any other person using the vehicle on an **insured location** with your consent.

5. **"Insured location"** means:

   a. the **residence premises.**

   b. the part of other premises, other structures and grounds you use as a residence and:

      (1) which is shown on the declarations page;

      (2) which you acquire during the policy pe̶ for your use as a residence.

   c. any premises you use in connection wit̶ premises in 5.a. or 5.b. above.

   d. any part of a premises:

      (1) not owned by an **insured**; and

      (2) where an **insured** is temporarily residing.

   e. vacant land, other than farm land, owned by̶ rented to an **insured**.

   f. land owned by or rented to an **insured** on w̶ a one or two family dwelling is being built ̶ residence for an **insured**.

   g. individual or family cemetery plots or burial va̶ of an **insured**.

   h. any part of a premises occasionally rented to̶ **insured** for other than **business** use.

6. **"Occurrence"** means an accident, including expos̶ to conditions, which results in **bodily injury** **property damage** during the policy period.

7. **"Property damage"** means injury to, destruction of, loss of use of property.

8. **"Residence employee"** means an employee of ̶ **insured** who performs duties related to the owner̶ maintenance or use of the **residence premi̶** including maintenance or use of a motor vehicle. ̶ includes employees who perform similar du̶ elsewhere for an **insured**. This does not incl̶ employees while performing duties related to ̶ **business** of an **insured**.

9. **"Residence premises"** means the resider̶ **premises** shown on the declarations page. T̶ includes the one or two family dwelling, inclu̶ other structures, and grounds where an **insur̶** resides or intends to reside within 60 days after ̶ effective date of this policy.

## SECTION I - PROPERTY COVERAGE

### COVERAGE A (DWELLING)

We cover:

1. the dwelling on the **residence premises** shown on the declarations page including structures attached to the dwelling.

2. other structures on the **residence premises** set apart from the dwelling by clear space. This includes

structures connected to the dwelling by only a fen̶ utility line or similar connection.

The total limit of liability for other structures is the i̶ of liability shown on the declaration page or 10% ̶ the Coverage A (Dwelling) limit of liability, whichever greater. This is additional insurance and does ̶ reduce the Coverage A (Dwelling) limit of liability.

We do not cover other structures:

a.  used for business purposes; or

b.  wholly rented to any person, unless used solely as a private garage.

3.  wall to wall carpeting attached to a building on the **residence premises**.

## COVERAGE B (PERSONAL PROPERTY)

We cover:

1.  a.  personal property owned, worn or used by an **insured** while on the **residence premises**. This includes window or wall air conditioning units.

    b.  at your request, property of others while the property is on the part of the **residence premises** occupied by an **insured**.

2.  a.  personal property owned, worn or used by an **insured** anywhere in the world.

    b.  at your request, personal property of a **residence employee** when:

      (1)  the property is away from the residence premises of the **residence employee** and in the control of the **residence employee**; and

      (2)  while the **residence employee** is performing work for you.

    Our total limit of liability under 2.a. and 2.b. above is 10% of the Coverage B (Personal Property) limit of liability or $1000, whichever is greater. This is additional insurance and does not reduce the Coverage B (Personal Property) limit of liability.

**SPECIAL LIMITS OF LIABILITY.** These limits do not increase the Coverage B (Personal Property) limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1.  Money/Bank Cards.   $100 on money or numismatic property or loss by theft or unauthorized use of bank fund transfer cards registered to an **insured**.

2.  Bullion/Valuable Papers.   $500 on gold or silver bullion, manuscripts, notes, securities, stamps, philatelic property, accounts, bills, deeds, evidences of debt, letters of credit, passports, documents, transportation or other tickets.

3.  Jewelry/Watches/Furs.   $500 for loss by theft of gems, watches, jewelry or furs.

4.  **Business** Personal Property.   $2,500 on **business** property.

    We do not cover any **business** property:

    a.  that consists of samples or articles for sale or delivery; or

    b.  if the property is away from the **residence premises**.

## PROPERTY NOT COVERED.

We do not cover:

1.  articles separately described and specifically insured by this or other insurance.

2.  animals or birds.

3.  motor or engine propelled vehicles or m[...] designed for movement on land, including [...] machinery or equipment.

    However, we do cover such vehicles which [...] subject to motor vehicle registration and are:

    a.  devices and equipment for assistin[...] handicapped.

    b.  power mowers.

    c.  golf carts.

    d.  vehicles or machines used for recr[...] purposes while located on the res[...] **premises**.

    e.  farm equipment not designed for use pr[...] on public roads.

4.  trailers, semi-trailers or mobile homes.

    However, we do cover:

    a.  trailers and semi-trailers that are designed principally off public roads.

    b.  boat trailers while on the **residence** prem[...]

5.  aircraft meaning any device used or desi[...] flight, except model or hobby aircraft not [...] designed to carry people or cargo.

6.  watercraft, including outboard motors and fur[...] or equipment.

    We do cover watercraft, including outboard [...] and furnishings or equipment, while located [...] on the **residence premises**.

7.  property of roomers or tenants.

8.  property usually rented to others off the re[...] **premises**.

## EXTENSIONS OF COVERAGE.

1.  **DEBRIS REMOVAL.** We will pay your expens[...] removal from the **residence premises** of:

    a.  debris of covered property if a Peril [...] Against causes the loss.

    b.  a tree that has damaged covered prop[...] Peril Insured Against causes the tree to f[...]

    This does not increase the limit of liability th[...] to the damaged property.

2.  **LOSS OF USE.** If a loss caused by a Peril [...] Against under Section I makes the re[...] **premises** wholly or partially untenantable, we [...]

    a.  additional living expense, meaning any r[...] and reasonable increase in living expe[...] incur so that your household can ma[...] normal standard of living.

    b.  fair rental value, meaning the fair rental [...] that part of the residence premises usu[...] to others by you, less any expenses th[...] continue.

    The total limit of liability for all loss of use is 2[...] Coverage A (Dwelling) limit of liability. [...] additional insurance and does not red[...]

Coverage A (Dwelling) limit of liability. The deductible clause does not apply to loss of use coverage.

Payment will be for the reasonable time required to repair or replace the damaged property. If you permanently relocate, payment will be for the reasonable time required for your household to become settled.

The periods of time for loss of use are not limited by expiration of this policy.

3. **REASONABLE REPAIRS.** If a Peril Insured Against causes the loss, we will pay the reasonable cost you incur for necessary repairs made solely to protect covered property from further damage. This coverage does not increase the limit of liability that applies to the property being repaired.

4. **TREES, SHRUBS, PLANTS AND LAWNS.** We cover trees, shrubs, plants and lawns, on the **residence premises**, only for loss caused by the following Perils Insured Against: Fire or Lightning, Explosion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises**, Vandalism and Malicious Mischief, Riot and Civil Commotion and Theft or attempted theft.

The maximum limit of liability for this coverage is 5% of the Coverage A (Dwelling) limit of liability. We will not pay more than $250 for any one tree, shrub or plant, including the cost of removal. We do not cover property grown for **business** purposes.

This is not additional insurance and does not increase the Coverage A (Dwelling) limit of liability. The deductible clause does not apply to trees, shrubs, plants and lawns.

5. **PROPERTY REMOVED.** We pay for expense and damage incurred in the removal of covered property from an **insured location** endangered by a Peril Insured Against. This coverage exists on a pro rata basis for 30 days at each location to which such

property is removed for preservation. This is no additional insurance and does not increase the Coverage B (Personal Property) limit of liability.

6. **CONSEQUENTIAL LOSS.** We insure:

   a. property contained in a building on the **residence premises** against loss due to change in temperature as a direct result of physical damage to the dwelling, or any equipment contained in the dwelling, caused by a Peril Insured Against. The deductible clause does not apply to this coverage.

   b. property contained in a building on the **residence premises** against a loss due to change in temperature as a direct result of physical damage to any power, heating or cooling equipment (including connections and supply pipes) not contained in or on the dwelling, caused by a Peril Insured Against.

   The total limit of liability for the coverage described in 6.b. above is $500. This is not additional insurance and does not increase the Coverage B (Personal Property) limit of liability.

7. **AUTOMATIC REMOVAL.** If you move from the **residence premises** shown on the declarations page to another location within the United States, to be occupied as your principal residence, we cover:

   a. the personal property under Coverage B (Personal Property) at each location in the proportion that the value at each location bears to the total value of all the personal property covered under Coverage B (Personal Property).

   b. property in transit up to 10% of the Coverage B (Personal Property) limit of liability or $1,000, whichever is greater.

We provide coverage for only 30 days from the date the removal begins.

---

## SECTION I - PERILS INSURED AGAINST

### COVERAGE A (DWELLING)

We insure against all risks of physical loss to the property described in Section I Property Coverage, Coverage A (Dwelling) unless the loss is excluded in Section I Exclusions.

### COVERAGE B (PERSONAL PROPERTY)

We insure against physical loss to the property described in Section I Property Coverage, Coverage B (Personal Property) caused by a peril listed below, unless the loss is excluded in Section I Exclusions.

1. **Fire and Lightning.**

2. **Sudden and Accidental Damage from Smoke.**

3. **Windstorm, Hurricane and Hail.**

4. **Explosion.**

5. **Aircraft and Vehicles.**

6. **Vandalism and Malicious Mischief.**

7. **Riot and Civil Commotion.**

8. **Collapse of Building** or any part of the building.

9. **Accidental Discharge, Leakage or Overflow of Water or Steam** from within a plumbing, heating or air conditioning system or household appliance.

   A loss resulting from this peril includes the cost of tearing out and replacing any part of the building necessary to repair or replace the system or appliance. But this does not include loss to the system or appliance from which the water or steam escaped.

   Exclusions 1.a. through 1.h. under Section I Exclusions do not apply to loss caused by this peril.

10. **Falling Objects.**

    This peril does not include loss to property contained in a building unless the roof or outside wall of the building is first damaged by the falling object.

11. Freezing of household appliances.

HO-B

12. **Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

---

## SECTION I - EXCLUSIONS

1. The following exclusions apply to loss to property described under Coverage A (Dwelling) or Coverage B (Personal Property), but they do not apply to an ensuing loss caused by fire, smoke or explosion.

   a. We do not cover loss to electrical devices or wiring caused by electricity other than lightning.

   b. We do not cover loss caused by smog or by smoke from industrial or agricultural operations.

   c. We do not cover loss caused by windstorm, hurricane or hail to:

      (1) cloth awnings, greenhouses and their contents, buildings or structures located wholly or partially over water and their contents.

      (2) radio and television towers, outside satellite dishes, masts and antennas, including lead-in wiring, windchargers and windmills.

      (3) personal property contained in a building unless direct force of wind or hail makes an opening in a roof or wall and rain, snow, sand or dust enters through this opening and causes the damage.

   d. We do not cover loss of the following property by theft, including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

      (1) personal property while away from the **residence premises** at any other residence owned by, rented to or occupied by an **insured**, except while an **insured** is temporarily living there.

      (2) building materials and supplies not on the **residence premises**.

   e. We do not cover loss to machinery, appliances and mechanical devices caused by mechanical breakdown.

   f. We do not cover loss caused by:

      (1) wear and tear, deterioration or loss caused by any quality in property that causes it to damage or destroy itself.

      (2) rust, rot, mold or other fungi.

      (3) dampness of atmosphere, extremes of temperature.

      (4) contamination.

      (5) rats, mice, termites, moths or other insects.

      We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

   g. We do not cover loss caused by animals or b owned or kept by an **insured** or occupant of **residence premises**.

      We do cover ensuing loss caused by collaps building or any part of the building, water dam or breakage of glass which is part of the buil if the loss would otherwise be covered under policy.

   h. We do not cover loss under Coverag (Dwelling) caused by settling, cracking, bul shrinkage, or expansion of foundations, w floors, ceilings, roof structures, walks, dr curbs, fences, retaining walls or swimming po

      We do cover ensuing loss caused by collaps building or any part of the building, water dam or breakage of glass which is part of the buil if the loss would otherwise be covered under policy.

   i. We do not cover loss caused by or resulting fr flood, surface water, waves, tidal water or waves, overflow of streams or other bodie water or spray from any of these whether or driven by wind.

      We do cover an ensuing loss by theft attempted theft or any act or attempted ac stealing.

   j. We do not cover loss caused by or resulting fr freezing while the building is unoccupied unl you have used reasonable care to:

      (1) maintain heat in the building; or

      (2) shut off the water supply and d plumbing, heating and air condition systems of water.

   k. We do not cover loss caused by earthqu landslide or earth movement.

2. **GOVERNMENTAL ACTION.**

   We do not cover loss caused by the destructio property by order of governmental authority.

   But we do cover loss caused by acts of destruct ordered by governmental authority taken at the tim a fire to prevent its spread, if the fire would be cove under this policy.

3. **BUILDING LAWS.**

   We do not cover loss caused by or resulting from enforcement of any ordinance or law regulating construction, repair or demolition of a building structure.

4. **WAR DAMAGE.**

   We do not cover loss resulting directly or indire from war. This includes undeclared war, civil v insurrection, rebellion, revolution, warlike act military personnel, destruction or seizure or use

military purpose, and any consequence of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

5. **NUCLEAR DAMAGE.**

We do not cover loss resulting directly or indir: from nuclear reaction, radiation or radioa: contamination, all whether controlled or uncontr: or however caused. We cover direct loss by resulting from nuclear reaction, radiation radioactive contamination.

## SECTION I - DEDUCTIBLES

**DEDUCTIBLE CLAUSE 1 - WINDSTORM, HURRICANE, HAIL OR WIND DRIVEN RAIN** - The amount shown on the declarations page for Deductible Clause 1 will be deducted from the combined amount of each loss under Coverage A (Dwelling) and Coverage B (Personal Property) that results from windstorm, hurricane, hail or wind driven rain.

**DEDUCTIBLE CLAUSE 2 - ALL OTHER PERILS** - The amount shown on the declarations page for Deductible

Clause 2 will be deducted from the combined amou: each loss under Coverage A (Dwelling) and Coverage: (Personal Property), unless the loss results from windst: hurricane, hail or wind driven rain.

If a single event causes loss by windstorm, hurricane, or wind driven rain and loss by lightning, only the lar deductible will apply.

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

    a. to the **insured** for more than the amount of the **insured's** interest at the time of loss; or

    b. for more than the applicable limit of liability.

    Each time there is a loss to any building insured under Coverage A (Dwelling), the amount of insurance applicable to that building for loss by fire will be reduced by the amount of the loss. As repairs are made, the amount of insurance will be reinstated up to the limit of liability shown on the declarations page.

    Article 6.13. Policy A Liquidated Demand. A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. The provisions of this article shall not apply to personal property.

2. **Residential Community Property Clause.** This policy, subject to all other terms and conditions, when covering residential community property, as defined by state law, shall remain in full force and effect as to the interest of each spouse covered, irrespective of divorce or change of ownership between the spouses unless excluded by endorsement attached to this policy, until the expiration of the policy or until cancelled in accordance with the terms and conditions of this policy.

3. **Duties After Loss.**

    a. **Your Duties After Loss.** In case of a loss to covered property caused by a peril insured against, you must:

        (1) give prompt written notice to us of the facts relating to the claim.

        (2) notify the police in case of loss by theft.

        (3) (a) protect the property from further damage.

        (b) make reasonable and necessary rep: to protect the property.

        (c) keep an accurate record of rep: expenses.

    (4) furnish a complete inventory of damag: personal property showing the quan: description and amount of loss. Attach bills, receipts and related documents wi: you have that justify the figures in : inventory.

    (5) – as often as we reasonably require:

        (a) provide us access to the damag: property.

        (b) provide us with pertinent records a: documents we request and permit us make copies.

        (c) submit to examination under oath a: sign and swear to it.

    (6) send to us if we request, your signed swo: proof of loss within 91 days of our requ: on a standard form supplied by us. We mu: request a signed sworn proof of loss wil: 15 days after we receive your written notic: or we waive our right to require a proof : loss. Such waiver will not waive our oth: rights under this policy.

        (a) This proof of loss shall state, to the be: of your knowledge and belief:

            (i) the time and cause of loss;

            (ii) the interest of the **insured** and : others in the property involve including all liens on the property.

            (iii) other insurance which may cov: the loss.

            (iv) the actual cash value of each ite: of property and the amount of los: to each item.

(b) If you elect to make claim under the Replacement Cost Coverage of this policy, this proof of loss shall also state, to the best of your knowledge and belief:

    (i) the replacement cost of the described dwelling.

    (ii) the replacement cost of any other building on which loss is claimed.

    (iii) the full cost of repair or replacement of loss without deduction for depreciation.

b. **Our Duties After Loss.**

    (1) Within 15 days after we receive your written notice of claim, we must:

        (a) acknowledge receipt of the claim.

        If our acknowledgement of the claim is not in writing, we will keep a record of the date, method and content of our acknowledgement.

        (b) begin any investigation of the claim.

        (c) specify the information you must provide in accordance with "Your Duties After Loss" (Item 3.a. above).

        We may request more information, if during the investigation of the claim such additional information is necessary.

    (2) After we receive the information we request, we must notify you in writing whether the claim will be paid or has been denied or whether more information is needed:

        (a) within 15 business days; or

        (b) within 30 days if we have reason to believe the loss resulted from arson.

    (3) If we do not approve payment of your claim or require more time for processing your claim, we must:

        (a) give the reason for denying your claim; or

        (b) give the reasons we require more time to process your claim. But, we must either approve or deny your claim within 45 days after requesting more time.

4. **Loss Settlement.** Covered property losses are settled as follows:

a. Our limit of liability and payment for covered losses to personal property, wall to wall carpeting, cloth awnings and fences will not exceed the smallest of the following:

    (1) the actual cash value at the time of loss determined with proper deduction for depreciation.

    (2) the cost to repair or replace the damaged property with material of like kind and

quality, with proper deduction depreciation; or

    (3) the specified limit of liability of the policy.

b. Our limit of liability for covered losses to dwe''' and other structure(s) under Coverage (Dwelling), except wall to wall carpeting, cl awnings and fences, will be at replacement c settlement subject to the following:

    (1) If, at the time of loss, the Coverage (Dwelling) limit of liability is 80% or more the full replacement cost of the dwelling, will pay the repair or replacement cost of damaged building structure(s), with deduction for depreciation.

    (2) If, at the time of loss, the Coverage (Dwelling) limit of liability is less than 80% the full replacement cost of the dwelling, will pay only a proportionate share of the replacement cost of the damaged build structure(s). Our share is equal to:

$$\frac{\text{Replacement Cost of the Loss} \times \text{Coverage A (Dwelling) Limit of Liability}}{80\% \text{ of Replacement Cost of the Dwellin}}$$

    (3) If, at the time of loss, the actual cash value the damaged building structure(s) is gre than the replacement cost determined un (1) or (2) above, we will pay the actual c value up to the applicable limit of liability.

In determining the amount of insurance requi to equal 80% of the full replacement cost of dwelling, do not include the value of excavation underground pipes, and wiring and foundatic which are below the surface of the ground.

We will pay only the actual cash value of damaged building structure(s) until repair replacement is completed. Repair replacement must be completed within 365 da after loss unless you request in writing that t time limit be extended for an additional 180 da Upon completion of repairs or replacement, will pay the additional amount claimed un replacement cost coverage, but our payment not exceed the smallest of the following:

    (1) the limit of liability under this po'' applicable to the damaged or destroy building structure(s);

    (2) the cost to repair or replace that part of building structure(s) damaged, with mater of like kind and quality and for the same and occupancy on the same premises; or

    (3) the amount actually and necessarily spent repair or replace the damaged buil structure(s).

5. **Loss to a Pair or Set.** In case of loss to an item wh is part of a pair or set, the measure of loss shall b reasonable and fair proportion of the total value of pair or set. The importance of the item will considered in assessing the loss. Such loss will not considered a total loss of the pair or set.

6. **Salvage Rights.** If we notify you that we will pay your claim or part of your claim, the notice must also state whether we will or will not take all or any part of the damaged property. We must bear the expense of our salvage rights.

7. **Appraisal.** If you and we fail to agree on the actual cash value, amount of loss, or cost of repair or replacement, either can make a written demand for appraisal. Each will then select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a district court of a judicial district where the loss occurred. The two appraisers will then set the amount of loss, stating separately the actual cash value and loss to each item. If you or we request that they do so, the appraisers will also set:

   a. the full replacement cost of the dwelling.

   b. the full replacement cost of any other building upon which loss is claimed.

   c. the full cost of repair or replacement of loss to such building, without deduction for depreciation.

   If the appraisers fail to agree, they will submit their differences to the umpire. An itemized decision agreed to by any two of these three and filed with us will set the amount of the loss. Such award shall be binding on you and us.

   Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally.

8. **Loss Payment.**

   a. If we notify you that we will pay your claim, or part of your claim, we must pay within 5 business days after we notify you.

   b. If payment of your claim or part of your claim requires the performance of an act by you, we must pay within 5 business days after the date you perform the act.

9. **Catastrophe Claims.**

   If a claim results from a weather related catastrophe or a major natural disaster, each claim handling deadline shown under the Duties After Loss and Loss Payment provisions is extended for an additional 15 days.

   Catastrophe or Major Natural Disaster means a weather related event which:

   a. is declared a disaster under the Texas Disaster Act of 1975; or

   b. is determined to be a catastrophe by the State Board of Insurance.

0. **Other Insurance - Section I.** Other insurance is permitted on property covered by this policy, but other insurance covering the dwelling is not permitted. If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy

bears to the total amount of insurance covering the loss.

11. **Suit Against Us.** No suit or action can be brought unless the policy provisions have been complied with. Action brought against us must be started within two years and one day after the cause of action accrues.

12. **Abandonment of Property.** There can be no abandonment of property to us.

13. **Vacancy.** If the insured moves from the dwelling and a substantial part of the personal property is removed from that dwelling, the dwelling will be considered vacant. Coverage that applies under Coverage A (Dwelling) will be suspended effective 60 days after the dwelling becomes vacant. This coverage will remain suspended during such vacancy.

14. **Mortgage Clause (without contribution).**

   a. The word "mortgagee" includes trustee.

   b. We will pay for any covered loss of or damage to buildings or structures to the mortgagee shown on the declarations page as interests appear.

   c. The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building or structure.

   d. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgagee has the right to receive loss payment if the mortgagee:

      (1) at our request, pays any premiums due under this policy, if you have failed to do so.

      (2) submits a signed, sworn statement of loss within 91 days after receiving notice from us of your failure to do so.

      (3) has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgagee.

   All of the terms of this policy will then apply directly to the mortgagee. Failure of the mortgagee to comply with d.(1), d.(2) or d.(3) above shall void this policy as to the interest of the mortgagee.

   e. If we pay the mortgagee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

      (1) the mortgagee's rights under the mortgage will be transferred to us to the extent of the amount we pay.

      (2) the mortgagee's right to recover the full amount of the mortgagee's claim will not be impaired.

   At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If this policy is cancelled, we will give the mortgagee specifically named on the declarations page written notice of cancellation.

If we cancel the policy, we will give the mortgagee the same number of days notice of cancellation we give you.

If you cancel the policy, we will give the mortgagee notice of cancellation to be effective on the date stated in the notice. The date of cancellation cannot be before the 10th day after the date we mail notice.

We will not give notice of cancellation to any successor or assignee of the mortgagee named in this policy.

g. If the property described under Coverage A (Dwelling) is foreclosed upon under the deed of trust, the mortgagee may cancel this policy of

insurance and will be entitled to any un[...] premiums from this policy.

The mortgagee must credit any un[...] premium against any deficiency owed [...] borrower and return any unearned premi[...] so credited to the borrower. The un[...] premium will be figured using the custom[...] rata procedures.

h. If we elect not to renew this policy, the mort[...] specifically named on the declarations pa[...] be given 30 days written notice of the[...] renewal.

15. **No Benefit to Bailee.** We will not recogniz[...] assignment or grant any coverage for the benefit[...] person or organization holding, storing or m[...] property for a fee.

## SECTION II - LIABILITY COVERAGE

### COVERAGE C (Personal Liability)

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable. Damages include pre-judgment interest awarded against the **insured**; and

2. provide a defense at our expense by counsel of our choice even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate.

### COVERAGE D (Medical Payments to Others)

We will pay the necessary medical expenses incurred or medically determined within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic

devices and funeral services. This coverage does not to you or regular residents of your household. coverage does apply to **residence employees**. others, this coverage applies only:

1. to a person on the **insured location** wit[...] permission of an **insured**.

2. to a person off the **insured location**, if the b[...] injury:

   a. arises out of a condition on the **insured loc**[...] or the ways immediately adjoining.

   b. is caused by the activities of an **insured**.

   c. is caused by a **residence employee** i[...] course of the **residence emplo**[...] employment by an **insured**.

   d. is caused by an animal owned by or in the c[...] an **insured**.

## SECTION II - EXCLUSIONS

1. **Coverage C (Personal Liability) and Coverage D (Medical Payments to Others)** do not apply to:

   a. **bodily injury** or **property damage** which is caused intentionally by or at the direction of the **insured**;

   b. **bodily injury** or **property damage** arising out of or in connection with a **business** engaged in by an **insured**. But this exclusion does not apply to activities which are ordinarily incidental to non-business pursuits.

   c. **bodily injury** or **property damage** arising out of the rental or holding for rental of any part of any premises by an **insured**. This exclusion does not apply to the rental or holding for rental of an **insured location**:

      (1) on an occasional basis if used only as a residence.

      (2) in part for use only as a residence, un[...] single family unit is intended for use b[...] occupying family to lodge more than[...] roomers or boarders.

      (3) in part, as an office, school or studio.

      (4) if the rental is for not more than thre[...] spaces or stalls in garages or stables.

   d. **bodily injury** or **property damage** arising o[...] the rendering of or failure to render profess[...] services.

   e. **bodily injury** or **property damage** arising o[...] a premises:

      (1) owned by an **insured**;

      (2) rented to an **insured**; or

HO-B                                    - 8 -

(3) rented to others by an **insured**;

that is not an **insured location**.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**.

f. **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of:

(1) motor or engine propelled vehicles or machines designed for movement on land, including attached machinery or equipment;

(2) trailers, semi-trailers or mobile homes;

which are owned or operated by or rented or loaned to an **insured**.

However, this exclusion does not apply to:

(1) motor vehicles which are not subject to motor vehicle registration and are:

(a) used for assisting the handicapped.

(b) used to service an **insured location**.

(c) golf carts while on the **residence premises** or used for golfing purposes.

(d) designed and used for recreational purposes; and are:

(i) not owned by an **insured**; or

(ii) owned by an **insured** while on the **residence premises**.

(e) in dead storage on the **residence premises**.

(f) used exclusively on the **residence premises**.

(2) trailers or semi-trailers while not being towed by or carried on a motor vehicle.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**.

g. **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of watercraft:

(1) with inboard or inboard-outdrive motor power of more than 50 horsepower owned by or rented to an **insured**.

(2) powered by one or more outboard motors with more than 25 total horsepower if the outboard motor is owned by an **insured**. But, outboard motors of more than 25 total horsepower are covered for the policy period if:

(a) you acquire them prior to the policy period and:

(i) you declare them at policy inception; or

(ii) your intention to insure is reported to us in writing within 45 days after you acquire the outboard motor.

(b) you acquire them during the policy period.

(3) that is a sailing vessel, with or without auxiliary power, which is 26 feet or more in length owned by or rented to an **insured**.

This exclusion does not apply while the watercraft on the **residence premises**.

This exclusion does not apply to **bodily injury** to **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**.

h. **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of aircraft.

Aircraft means any device used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

This exclusion does not apply to **bodily injury** to **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**.

i. **bodily injury** or **property damage** arising out of

(1) the entrustment by an **insured** to any person; or

(2) the negligent supervision by an **insured** of any person;

with regard to the ownership, maintenance or use of any motor vehicle, watercraft or aircraft which is excluded in paragraph f., g. or h. above.

This exclusion does not apply to **bodily injury** to **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**.

j. **bodily injury** or **property damage** caused directly or indirectly by war. This includes undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and any consequence of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

k. **bodily injury** or **property damage** arising out of the transmission of sickness or disease by an **insured** through sexual contact.

l. **bodily injury** to any person eligible to receive any benefits voluntarily provided or required to be provided by an **insured** under any workers' compensation law or occupational disease law.

2. **Coverage C (Personal Liability)** does not apply to:

a. liability under any contract or agreement.

However, this exclusion does not apply to written contracts:

HO-B

- 9 -

(1) that directly relate to the ownership, maintenance or use of an **insured location**; or

(2) where the liability of others is assumed by an **insured**;

unless excluded elsewhere in this policy.

b. **property damage** to property owned by an **insured**.

c. **property damage** to property rented to, occupied or used by or in the care of an **insured**. This exclusion does not apply to **property damage** caused by fire, smoke or explosion.

d. **bodily injury** or **property damage** for which an **insured** under this policy is also an insured under a nuclear energy liability policy or would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issue[d] American Nuclear Insurers, Mutual At[…] Energy Liability Underwriters, or Nu[…] Insurance Association of Canada.

e. **bodily injury** to you or an **insured** within meaning of part a. or part b. of **insured** defined.

3. Coverage D (Medical Payments to Others) does apply to:

a. **bodily injury** to a **residence employee** if **bodily injury**:

(1) occurs off the **insured location**; and

(2) does not arise out of or in the course of **residence employee's** employment by **insured**.

b. **bodily injury** to any person, other tha[n] **residence employee** of an **insured**, regu[…] residing on any part of the **insured** loca[…]

---

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

a. expenses we incur and costs taxed against an **insured** in any suit we defend.

b. premiums on bonds required in a suit we defend but not for bond amounts more than the limit of liability for Coverage C (Personal Liability). We need not apply for or furnish any bond.

c. reasonable expenses incurred by an **insured** at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit.

d. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **Imperative Medical Expenses to Others.** We pay expenses incurred by an **insured** for immediate medical and surgical relief to others if imperative at the time of the accident.

3. **Damage to Property of Others.** We pay replace[…] cost up to $500 per **occurrence** for **property dam**[…] to property of others caused by an **insured**.

We do not pay for **property damage**:

a. caused intentionally by an **insured** who [is…] years of age or older.

b. to property owned by an **insured**.

c. to property owned by or rented to a tenant [of…] **insured** or a resident in your household.

d. arising out of:

(1) a **business** engaged in by an **insured**.

(2) any act or omission in connection w[…] premises owned, rented or controlled [by…] **insured**, other than the **insured** locatio[…]

(3) the ownership, maintenance, use, loadi[ng] unloading of aircraft, watercraft or m[…] vehicles or all other motorized conveyances.

This exclusion does not apply to any mot[…] land conveyance designed for recreation[…] off public roads, not subject to motor v[…] registration and not owned by an **ins**[…]

---

## SECTION II - CONDITIONS

1. **Limit of Liability.** The limit of liability for Coverage C (Personal Liability) shown on the declarations page is our total liability under Coverage C (Personal Liability) for all damages resulting from any one **occurrence**. This limit is the same regardless of the number of **insureds**, claims made or persons injured.

The limit of liability for Coverage D (Medical Payments to Others) shown on the declarations page is our total liability under Coverage D (Medical Payments to Others) for all medical expense payable for **bodily**

**injury** to one person as the result of one acc[…] The total limit of our liability for all expenses pay[…] two or more persons injured in one accid[…] $25,000.

2. **Severability of Insurance.** This insurance a[…] separately to each **insured**. This condition w[…] increase our limit of liability for any one **occurren**[…]

3. **Duties After Loss.** In case of an accid[ent…] **occurrence**, the **insured** will perform the fo[…]

- 19 -

duties that apply or will help us by seeing that these duties are performed:

a. Give written notice to us or our agent as soon as is practical, which sets forth:

    (1) the identity of the policy and **insured**.

    (2) reasonably available information on the time, place and circumstances of the accident or **occurrence**.

    (3) names and addresses of any claimants and witnesses.

b. Promptly forward to us every notice, demand, summons or other process relating to the accident or **occurrence**.

c. At our request, help us:

    (1) to make settlement.

    (2) to enforce any right of contribution or indemnity against any person or organization who may be liable to an **insured**.

    (3) with the conduct of suits, including attending hearings and trials.

    (4) to secure evidence and obtain the attendance of witnesses.

d. The **insured** will not, except at the **insured's** own cost, voluntarily make payment, assume obligation or incur expense other than for immediate medical and surgical relief to others at the time of the **bodily injury**.

**4. Duties of an Injured Person - Coverage D (Medical Payments to Others).**

The injured person or someone acting for the injured person will:

a. give us written proof of claim, under oath if required, as soon as is practical.

b. authorize us to obtain copies of medical reports and records.

The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**5. Payment of Claim - Coverage D (Medical Payment to Others).** Payment under this coverage is not admission of liability by an **insured** or us.

**6. Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

No one will have the right to join us as a party to an action against an **insured**. Also, no action with respect to Coverage C (Personal Liability) can be brought against us until the obligation of the **insured** has been determined by final judgment or agreement.

Under Coverage D (Medical Payments to Others), no action can be brought until 30 days after the required proofs of claim have been filed with us.

**7. Bankruptcy of the Insured.** Bankruptcy or insolvency of the **insured** or of the **insured's** estate will not relieve us of our obligations under this policy.

**8. Other Insurance - Section II.** If the **insured** has other insurance under Coverage C (Personal Liability), we will not be liable for a greater proportion of a loss than the limit of liability shown on the declarations page bears to the total limit of all valid and collectible insurance against such loss.

However, with respect to loss arising out of the ownership, maintenance, operation, use, loading or unloading of:

a. any motor vehicle or recreational motor vehicle at the **residence premises**; or

b. watercraft,

this policy will not apply to the extent that any valid and collectible insurance is available to the **insured**.

**9. Notice of Settlement of Liability Claim.**

a. We will notify the **insured** in writing of any initial offer to compromise or settle a claim against the **insured** under the liability section of this policy. We will give the **insured** notice within 10 days after the date the offer is made.

b. We will notify the **insured** in writing of any settlement of a claim against the **insured** under the liability section of this policy. We will give the **insured** notice within 30 days after the date of the settlement.

## SECTION I AND II - CONDITIONS

**1. Policy Period.** This policy applies only to loss in Section I or **bodily injury** or **property damage** in Section II which occurs during the policy period stated on the declarations page.

**2. Concealment or Fraud.** This policy is void as to you and any other **insured**, if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance, made false statements or committed fraud relating to this insurance, whether before or after a loss.

**3. Liberalization Clause.** If the State Board of Insurance adopts a revision which would broaden or extend the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened or extended coverage will immediately apply to this policy.

**4. Waiver or Change of Policy Provisions.** Changes in this policy may be made and perils added only by attaching a written endorsement properly executed by our authorized agent. No provision of this policy may be waived unless the terms of this policy allow the

CMPDF • www.fax.faxio.com

provision to be waived.  Our request for an appraisal or examination will not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by notifying us of the date cancellation is to take effect. We will send you any refund due when the policy is returned to us.

   b. We may cancel this policy for the reasons stated in this condition by mailing you notice in writing of the date cancellation takes effect.

      (1) If this policy has been in effect for less than 90 days and is not a renewal policy, we may cancel this policy for any reason.

      The effective date of cancellation cannot be before:

      (a) the 10th day after we mail notice if we cancel for non-payment of premium.

      (b) the 30th day after we mail notice if we cancel for any other reason.

      (2) If this policy has been in effect 90 days or more, we may not cancel this policy unless:

      (a) you do not pay the premium or any portion of the premium when due.

      (b) the State Board of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state.

      (c) you submit a fraudulent claim.

      (d) there is an increase in hazard covered by this policy that is within your control and that would produce an increase in the premium/rate of this policy.

      The effective date of cancellation cannot be before the 10th day after we mail the notice. Our notice of cancellation must state the reason for cancellation.

   c. If we cancel, our notice to you will state that if the refund is not included with the notice, it will be returned on demand.

   d. We may not cancel this policy solely because you are an elected official.

6. **Refusal to Renew.**

   a. We may not refuse to renew this policy because of claims for losses resulting from natural causes.

   b. We may not refuse to renew this policy solely because you are an elected official.

   c. We may refuse to renew this policy if you have filed three or more claims under the policy in any three year period that do not result from natural causes.

      If you have filed two claims in a period of less than three years, we may notify you in writing that if you file a third claim during the three year period, we may refuse to renew this policy by providing you proper notice of our refusal to renew as provided in d. below.  If we do not notify you after the second claim, we may not refuse to renew this policy because of losses.

      A claim does not include a claim that is filed but is not paid or payable under the policy.

   d. If we refuse to renew this policy, we must deliver to you, or mail to you at your mailing address shown on the declarations page and any mortgagee named in the declarations page written notice of our refusal to renew not later than the 30th day before the date in which this policy expires.  Proof of mailing will be sufficient proof of notice.  If we fail to give you proper notice of our decision not to renew, you may require us to renew the policy.

7. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

8. **Subrogation.** An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If an assignment is sought, an **insured** must sign and deliver all related papers and cooperate with us.

   Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If the named insured dies, we insure:

   a. the named insured's spouse, if a resident of the same household at the time of death.

   b. the legal representative of the deceased. However, if this legal representative was not an **insured** at the time of death of the named insured, this policy will apply to such legal representative only with respect to the premises of the original named insured.

   c. any person who is an **insured** at the time of such death, while a resident of said premises.

**Prescribed by the Texas Department of Insurance**
**Homeowners Form B - Effective July 8, 1992**
**(Revised January 1, 1996)**

# EXHIBIT "B"

CutePDF - www.fastio.com

Case 1:01-cv-00065  Document 11  Filed in TXSD on 09/06/2001  Page 26 of 32

82010707

CAUSE NO. 800000-8441-A

| | | |
|---|---|---|
| DEBORAH LOUISE ROBERTS | § | IN THE DISTRICT COURT 455 |
| V. | § | 167 JUDICIAL DISTRICT |
| MARK ROBERTS | § | CAMERON COUNTY, TEXAS |

AURORA DE LA GARZA DIST. CL
JUN 0 9 2000
DISTRICT COURT OF CAMERON COUNTY,
JANIE WOLFE

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, DEBORAH LOUISE ROBERTS, hereinafter referred to as Plaintiff, complaining of MARK ROBERTS, hereinafter referred to as Defendant , for cause of action shows the court the following:

I

Plaintiff is a resident of Rancho Viejo, Cameron County, Texas. Defendant is a resident of Cameron County and may be served with process by serving him at his place of employment, c/o Tip o Tex Chevrolet Dealership, 1600 N. Expressway, Brownsville, Cameron County, Texas, 78521-1440.

II

On or about June 11, 1999, defendant willfully, and without plaintiff's knowledge or consent, obtained very personal, highly embarrassing and historical

1


EXHIBIT
" B "

Information belonging to Plaintiff before her marriage to Defendant. This information was acquired by stealth and deception by the Defendant. It was never voluntarily provided or given to the Defendant. This information dealt with a prior marriage and an annulment and its causes. There were personal drafts and correspondence between Plaintiff and a religious institution to obtain the annulment. The original hand written drafts and correspondence in Plaintiff's was copied and distributed to various individuals one of whom is Defendant's current wife who mailed a set of copies of this information to the Plaintiff informing her that her children and others had access to this information. Defendant willfully, and without plaintiff's knowledge or consent, obtained said personal correspondence that belonged to Plaintiff after she obtained a divorce from the defendant about a relationship with a third person after their divorce. Plaintiff then published all of that information to his long time paramour and current wife to be used in litigation currently pending between the current and ex- wife. This information was obtained to cruelly deprive plaintiff of her right to be free from wrongful intrusion and cause disclosure of and about her private affairs. Defendant not only published said written information to his current spouse, but to his children, his current wife's children from multiple previous relationships and to attorneys involved with his current spouse's litigation dispute with Plaintiff.

III

As a direct and proximate result of defendant's unjustified and unlawful

2

Case 1:01-cv-00085   Document 11   Filed in TXSD on 09/06/2001   Page 28 of 32

820/07 01,

invasion of plaintiff's privacy, plaintiff suffered a loss of privacy.  Furthermore,
plaintiff has suffered severe humiliation, embarrassment, fear, frustration, and
general mental anguish, and in all reasonable likelihood she will continue to do so
for a long time in the future and for the balance of her natural life.  As a further
direct and proximate result of the occurrence made the basis of this action, plaintiff
has been in a continual state of depression and has lost considerable sleep over the
past several months, which condition is expected to continue for a long time into
the future.

## IV

As a further direct and proximate result of the above-described invasion of
plaintiff's privacy, plaintiff has incurred reasonable and necessary medical care and
attention in the past in a sum in excess of the minimum jurisdictional limits of this
court.  These expenses were incurred for necessary care and treatment of the
plaintiff's condition resulting from the occurrence made the basis of this action.
The charges incurred are reasonable, and they were the usual and customary
charges made for these services in Cameron County, Texas.  As a further    direct
and proximate result of the plaintiff's condition, there is a reasonable probability
that plaintiff will require further medical care and attention and will incur additional
reasonable expenses for necessary medical care and attention in the future.

## V

Plaintiff has suffered actual losses and actual damages as a direct and

3

820 107 0177

proximate result of defendant's cruel and wrongful invasion of her privacy described above in a sum in excess of this court's minimum jurisdictional limits.

## VI

Defendant's conduct constituted a malicious violation of plaintiff's right to privacy.   Plaintiff, therefore, is entitled to recover exemplary damages. Accordingly, plaintiff uses for exemplary damages in a sum in excess of the minimum jurisdictional limits of this court.

# SECOND CAUSE OF ACTION

## VII

Plaintiff incorporates all of paragraphs II through VI. By June 11, 1999, defendant intentionally or recklessly harassed and humiliated plaintiff by allowing several known third parties to read this confidential and highly private information about the Plaintiff.

## VIII

The defendant's conduct was extreme and outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, as to be regarded as atrocious and utterly intolerable in a civilized community.  In particular, the conduct was outrageous because these incidents occurred over 15 years ago and contained information of a highly confidential and private relationship that had

IIED

4

JUN-14-2000 WED 08:36 AM  RIP  REX CHEVROLET ACC DPT

820 107 0177

nothing to do with the Defendant during his marriage to the Plaintiff.

## IX

The defendant's conduct proximately caused plaintiff damage in that it caused plaintiff to suffer sever emotional distress.  In particular, the defendant's conduct was the direct and proximate cause of severe disappointment, indignation, wounded pride, shame despair, and public humiliations in that Plaintiff's children were allowed by the defendant to read such information which they had no business reading.

## X

Defendant's emotional distress has been severe in that plaintiff has suffered numerous, intense headache, is unable to sleep at night, has been unable to enjoy or digest her food to the extent of losing weight, and has had to engage the services of a psychiatrist and psychologist to assist her in dealing with these overwhelming feelings of indignation, wounded pride, shame despair, and public humiliation.

## XI

Plaintiff has had problems in the past with alcoholism and this outrageous behavior by the Defendant has created an environment for her to abandon her control and increase her desire for alcohol as a means of escape from the

5

8EO 107 0177

harassment, betrayal, and brutality of dealing with these issues made known to her children and to Defendant's current spouse who is using this mechanism to

destabilize the plaintiff and cause her more suffering.

### XII

In addition to severe emotional distress; the plaintiff has suffered and will continue to suffer additional damages as a proximate result of the defendnat's conduct in that , in all reasonable probability, plaintiff will continue to suffer this mental pain and anguish for a long time into the further.  Plaintiff has also incurred loss of earning capacity and future loss of earning capacity.

### XIII

The conduct described in this petition was malicious so as to entitle plaintiff to recover exemplary damages.  In this connection, plaintiff will sow that as a result of defendant's conduct, plaintiff has suffered losses of time and other expenses, including attorney's fees incurred in the investigation and prosecution of this action.  Accordingly, plaintiff asks that exemplary damages be awarded against the defendant in a sum in excess of the minimum jurisdictional limits of this court.

### XIV

Plaintiff would further show that she is entitled to pre-judgment interest pursuant to Texas Law.  Moreover, Plaintiff is entitled to post-judgment interest pursuant to Texas Law in the event same be necessary.

6

820 /070,

## XV

## JURY DEMAND

Plaintiff hereby makes her request for Jury Trial in this cause pursuant RULE

216 of the TEXAS RULES OF CIVIL PROCEDURE, and deposit with the District

Clerk Cameron County, Texas the Jury Fee of Thirty and No/100 Dollars ($30.00)

Dollars.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Defendant

be cited to answer this Petition, and pray upon final hearing hereof she recover her

damages as may be established by a jury of and from the Defendant, including but

not limited to all  actual damages, all costs of Court, Pre-judgment and Post-

Judgment Interest, and all other relief due them in law and equity or as herein pled.

RESPECTFULLY SUBMITTED,

LAW OFFICES OF
MARIA ESTELLA PEREZ
3505 BOCA CHICA BOULEVARD
INTERNATIONAL PLAZA, STE. 400
BROWNSVILLE, TEXAS 78521
(956) 546-3794  TELEPHONE
(956) 546-2181  TELECOPIER

MARIA ESTELLA PEREZ
STATE BAR #15777600
C.C.NO. 14901

COUNSEL FOR PLAINTIFF

7